**DALLAS COUNTY DISTRICT ATTORNEY, John Vance, Appellant,**

v.

**John DOE, Appellee.**

**The STATE of Texas, Appellant,**

v.

**John DOE, Appellee.**

Nos. 05–97–02111–CV, 05–98–00243–CV.

Court of Appeals of Texas, Dallas.

May 11, 1998.

John Clark Long, IV, Assistant District Attorney, Dallas, James Bradley Spalding, Assistant Attorney General, Austin, for Appellant.

Eric V. Moye, Vial, Hamilton, Koch & Knox, L.L.P, Dallas, for Appellee.

Before KINKEADE, WHITTINGTON and MOSELEY, JJ.

## OPINION

KINKEADE, Justice.

Dallas County District Attorney John Vance and the State of Texas (collectively, the State) appeal the trial court's declaratory judgment holding section 255.001 of the Tex-

as Election Code unconstitutional.[1] The issue presented is whether the civil district court properly exercised its equity jurisdiction to declare the statute unconstitutional. We conclude that the criminal district court and not the civil district court had jurisdiction to rule on the constitutionality of section 255.001. Accordingly, we vacate the trial court's judgment and dismiss the case.

## BACKGROUND

John Doe, a political consultant, agreed to assist the campaign of Frances Rizzo against an incumbent in the May 1997 Dallas City Council election. To counter a flier that appeared during the campaign containing negative information about Rizzo, Doe published an anonymous flier, entitled "The Pinocchio Flier," which compared statements made by the incumbent during the campaign with his official voting record. Doe asserted that he published the flier independent of his role in the Rizzo campaign. Doe hired The Order Desk, Inc. to distribute the flier via bulk mailing.

Sometime after the election, a citizen complaint was filed with the Dallas County District Attorney's Office (D.A.) regarding the Pinocchio Flier because it did not contain the name of the individual, candidate, or organization as required by section 255.001 of the election code, which provides in pertinent part:

(a) A person may not knowingly enter into a contract or other agreement to print, publish, or broadcast political advertising that does not indicate in the advertising:

(1) that it is political advertising;

(2) the full name of either the individual who personally entered into the contract or agreement with the printer, publisher, or broadcaster or the person that individual represents; and

(3) in the case of advertising that is printed or published, the address of either the individual who personally entered into the agreement with the printer or publisher or the person that individual represents.

* * * *

(c) A person who violates this section commits an offense. An offense under this section is a Class A misdemeanor.

TEX. ELEC.CODE ANN. § 255.001 (Vernon Supp.1998). An investigator from the D.A.'s office contacted Barbara Ross, president of The Order Desk, seeking the documents and records that would identify the customer who placed the order. Ross would not release the documents absent other authority.

On June 9, 1997, a subpoena duces tecum was issued summoning Ross to appear before the grand jury and to produce "[a]ny and all contracts or written agreements, receipts, bills of sale or any other information in relation to agreements to print, label or mail campaign materials bearing the Bulk Mail Permit 6803." The Order Desk filed a motion to quash the subpoena. The criminal district court judge supervising the grand jury heard the motion and postponed Ross's response to allow a federal court to review the constitutionality of the grand jury proceeding. The subpoena ultimately expired with the end of the grand jury term.

Doe filed an application for injunctive relief in the federal district court for the Northern District of Texas. Because the Texas state courts had not yet had the opportunity to rule on the constitutionality of the statute, the federal judge dismissed the action pursuant to the doctrine of abstention enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

On July 9, 1997, a second subpoena duces tecum was issued summoning Ross to appear and produce documents before the grand jury. Doe filed a plea in intervention and a motion to quash the subpoena. The D.A. filed a response asserting that Doe did not have standing to file either the plea in intervention or the motion to quash. The D.A. also claimed there was no authority for Doe to challenge the constitutionality of section 255.001 at that point in the proceedings. Another criminal district court judge, who was supervising the new grand jury, deferred ruling on the motion to quash pending the

---

1. The State filed a motion to consolidate the two appeals for purposes of disposition. The State presented oral argument on February 23, 1998, and is relying on the brief filed by the D.A.

outcome of a declaratory judgment action filed by Doe in the civil district court.

Doe filed a petition in the civil district court, seeking a declaration that section 255.001 violated the First Amendment to the United States Constitution. In addition to answers, the D.A. and the State of Texas filed pleas to the jurisdiction, asserting that the criminal district court was the proper place to bring the constitutional challenge. Doe thereafter filed a motion for summary judgment, asking the trial court to declare that section 255.001 of the Texas Election Code violated the First Amendment. The D.A. and the State of Texas filed responses, again asserting that the constitutionality of the statute was a proper matter for the criminal district court and the civil court could consider the constitutionality of the statute only if the requirements of *State v. Morales*, 869 S.W.2d 941 (Tex.1994), were satisfied. They also contended that the statute was constitutional. On September 23, 1997, the trial judge granted Doe's motion for summary judgment and declared section 255.001 unconstitutional. On October 7, 1997, the judge signed orders denying the pleas to the jurisdiction and granting Doe summary judgment on the constitutionality issue. On November 14, 1997, the judge signed the final judgment, holding section 255.001 "is violative of the First Amendment to the United States Constitution and therefore is void" and awarding Doe attorneys' fees.

Also on September 23, 1997, the criminal district court judge supervising the grand jury overruled Doe's motion to quash the grand jury subpoena. Doe thereafter filed a petition for writ of mandamus (cause no. 05–97–01572–CV), seeking to have this Court order the criminal court judge to quash the subpoena. We stayed the order during the pendency of the proceedings in this Court. During oral argument, the parties asserted that the subpoena in question expired with the end of the grand jury term and, thus, the mandamus proceeding is probably moot.

## DECLARATORY JUDGMENT

In four points of error, the State contends the trial court erred in granting summary judgment because: (1) the criminal district court is the proper court to determine the constitutionality of the Texas Election Code; (2) *Morales* does not provide for a civil district court to intervene in a criminal district court matter; (3) fact issues precluded summary judgment; and (4) section 255.001 is constitutional. Because we conclude points of error one and two are dispositive of this appeal, we will address them together.

### A. Applicable Law

■ The Uniform Declaratory Judgment Act is a procedural device for deciding cases already within a court's subject matter jurisdiction. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.001–.011 (Vernon 1997); *Morales*, 869 S.W.2d at 947; *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993). A request for declaratory relief cannot confer subject matter jurisdiction on the court, nor can it change the basic character of a suit. *Morales*, 869 S.W.2d at 947.

■ A civil court has jurisdiction to declare a criminal statute constitutionally invalid and enjoin its enforcement only when: (1) there is evidence that the statute is unconstitutionally applied by a rule, policy, or other noncriminal means subject to a civil court's equity powers and irreparable injury to property or personal rights is threatened; or (2) the enforcement of an unconstitutional statute threatens irreparable injury to property rights. *Id.* at 942. "A naked declaration as to the constitutionality of a criminal statute alone, without a valid request for injunctive relief, is *clearly* not within the jurisdiction of a Texas court sitting in equity." *Id.* (emphasis added).

■ In *Morales*, the supreme court identified four types of cases in which a party might seek relief from an equity court based upon the unconstitutionality of a criminal statute:

1. the statute is enforced and the party is being prosecuted;

2. the statute is enforced and the threat of prosecution is imminent, although the party has yet to be prosecuted;

3. there is no actual or threatened enforcement of the statute and the party

does not seek an injunction against its enforcement, but the statute is nonetheless integrally related to conduct subject to the court's equity jurisdiction; or

4. there is no actual or threatened enforcement of the statute and no complaint of specific conduct remediable by injunction.

*Id.* at 944–45. It is well settled that in the context of the first two categories, courts of equity will not interfere with the ordinary enforcement of a criminal statute unless the statute is unconstitutional and its enforcement will result in irreparable injury to *vested property rights. See id.* at 945; *Passel v. Fort Worth Ind. Sch. Dist.*, 440 S.W.2d 61, 63 (Tex.1969); *City of San Antonio v. Rankin,* 905 S.W.2d 427, 429 (Tex.App.—San Antonio 1995, no writ) (scenarios one and two will not offer equity jurisdiction unless vested property right in jeopardy); *see also Village of Lakeway v. Lakeway Mun. Util. Dist. No. 1,* 657 S.W.2d 912, 914 (Tex.App.—Austin 1983, writ ref'd n.r.e.) (utility district's property right to charge and collect water rates irreparably harmed by enforcement of ordinance, for which violation was misdemeanor, when village had no authority to regulate water rates). The reason behind this rule is that the meaning and validity of a penal statute should ordinarily be determined by a court exercising criminal jurisdiction. *Morales,* 869 S.W.2d at 945; *Passel,* 440 S.W.2d at 63. When the validity of a criminal statute can be determined in any criminal proceeding that may arise from the statute's enforcement and no vested property rights are threatened, there is no occasion for the intervention of equity. *Morales,* 869 S.W.2d at 945; *Passel,* 440 S.W.2d at 63.

## B. Application of Law to Facts

■ The State's first and second points of error challenge the jurisdiction of the civil district court judge to rule on the constitutionality of section 255.001. The State asserts that judicial economy is ill-served by "splitting" the case between a criminal district court and civil district court. Additionally, the State argues that this case sets a precedent of providing a "time out" in a grand jury proceeding to allow a litigant to obtain a declaratory ruling from a civil district court in the same county as the criminal district court that already has an interest in and jurisdiction over the proceeding. Moreover, the State contends that if the *Morales* court was reluctant to allow a civil court to address the constitutionality of a criminal statute in which no prosecution was threatened, it would be even more adamant in its refusal to allow such a determination where, as here, there was a pending criminal district court proceeding involving the same issue, in the nature of a grand jury, over which the criminal court exercised jurisdiction.

Doe asserts that his case is covered by the second category enunciated in *Morales.* That is, section 255.001 is being enforced and the threat of prosecution is imminent, but he has not yet been prosecuted. He does not argue that a property right is being threatened. Rather, Doe contends that his personal right under the First Amendment to engage in anonymous pamphleteering is threatened. Doe recognizes the general rule that civil courts cannot determine the constitutionality of a criminal statute and that ordinarily such a challenge should be brought in the context of a criminal proceeding arising from enforcement of the statute. He contends, however, that his desire for anonymity makes this case materially different from those contemplated by the *Morales* court.

Doe argues that he cannot challenge the constitutionality of section 255.001 in the context of criminal proceedings because "the very institution of the criminal proceedings against [him] vitiates the constitutional right which he seeks to protect." That is, Doe contends, "[h]is right to engage in constitutionally protected anonymous pamphleteering will be irretrievably lost" the moment a criminal prosecution is begun. Thus, even if he ultimately prevailed on the merits of his claim, he will have forever lost that which he is strenuously trying to protect—his anonymity. Moreover, Doe asserts the D.A. has challenged every forum in which Doe has attempted to contest the validity of section 255.001.

■ Equity jurisdiction does not flow merely from the alleged inadequacy of a legal

remedy, "nor can it originate solely from a court's intentions to do what is 'just' or 'right'." *Morales,* 869 S.W.2d at 942. Rather, jurisdiction—the very authority of the court to decide a case—is conferred solely by the constitution or by statute. *See id.* The legislature did not intend, by enacting the Declaratory Judgment Act, to enlarge the jurisdiction of the civil court to rule on the constitutionality of a criminal statute. *See id.* at 947. "A civil court simply has no jurisdiction to render naked declarations of 'rights, status or other legal relationships arising under a penal statute.'" *Id.* (quoting *Malone v. City of Houston,* 278 S.W.2d 204, 206 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.)). The general prohibition on civil courts exercising their equity jurisdiction in such a manner is especially important in light of Texas's bifurcated system of civil and criminal jurisdiction. *See Morales,* 869 S.W.2d at 942. For, if civil courts could exercise equity jurisdiction to determine the constitutionality of criminal statutes, there would exist a real danger of conflicting decisions between the civil and criminal courts of last resort regarding the validity of such statutes. *See id.* at 948; *see also Dearing v. Wright,* 653 S.W.2d 288, 290 (Tex.1983).

In his petition for declaratory relief, Doe did not include a valid request for injunctive relief. Rather, he sought only a declaration that section 255.001 was unconstitutional, and, apart from attorneys' fees, that is the only relief the trial court granted. Although we conclude in this case that a request for injunctive relief would not have entitled Doe to relief from the civil district court, the "naked" declaration that section 255.001 was unconstitutional, without a valid request for injunctive relief, was not within the jurisdiction of the civil district court sitting in equity. *See Morales,* 869 S.W.2d at 942.

■ Moreover, we are not persuaded that Doe had no adequate remedy within the context of the criminal proceedings. The State conceded during oral argument that either of the two criminal district court judges, as impaneling judges of their respective grand juries, could have determined the constitutionality of section 255.001. We agree. While the grand jury is clothed with great independence in many areas, it is also connected to the court that impaneled it. *See Ex parte Edone,* 740 S.W.2d 446, 448 (Tex. Crim.App.1987). The court exercises supervisory power over the grand jury, whether by impaneling, reassembling, qualifying, quashing subpoenas, or aiding investigations. *See id.* Moreover, the grand jury must look to the impaneling judge to enforce its subpoena power. *See Ex parte Wynne,* 772 S.W.2d 132, 135 (Tex.Crim.App.1989). In this context, the grand jury is often characterized as an arm of the court by which it is appointed rather than an autonomous entity. *Ex parte Edone,* 740 S.W.2d at 448 (citing WAYNE LAFAVE & JEROLD ISRAEL, CRIMINAL PROCEDURE, § 8.4, at 625 (1984)). We conclude the criminal district courts exercising supervisory authority over the grand jury could have and should have addressed the constitutionality of section 255.001 in the context of the proceedings brought during their grand jury terms.

Accordingly, we sustain the State's first and second points of error. We conclude that the civil district court did not have jurisdiction to declare section 255.001 of the Texas Election Code unconstitutional, and the court should have dismissed Doe's declaratory judgment action. *See Morales,* 869 S.W.2d at 949.

The most troubling aspect of this case is the waste of judicial resources. Section 255.001's constitutionality was challenged in two criminal district courts, one federal court, and one civil district court. However, although the issue was properly before the two criminal district courts, they did not rule on the matter. Because the criminal courts failed to act, Doe ultimately obtained the relief he sought in the civil district court, which had no jurisdiction to rule on the issue. Eleven months have passed since the original grand jury subpoena was issued. According to the parties' assertion, the subpoena in question is no longer effective; thus, assuming the D.A. will continue to pursue the matter, the parties must return to the beginning of the process. We express no opinion on the constitutionality of section 255.001. We do, however, hold that the issue of the statute's constitutionality is one properly

brought in a criminal district court. Moreover, we hold that if this issue is again properly brought before any criminal court having jurisdiction over the matter, that court can and should rule on the constitutionality of section 255.001.

Because of our disposition of points of error one and two, we need not address the State's third and fourth points of error. *See* TEX.R.APP. P. 47.1.

We vacate the trial court's judgment and dismiss the case.