ACCEPTED
06-14-00224-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/8/2015 9:40:27 AM
DEBBIE AUTREY
CLERK

06-14-00224-CR

IN THE COURT OF APPEALS
FOR THE SIXTH DISTRICT OF TEXAS
AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

5/8/2015 9:40:27 AM

DEBBIE AUTREY
Clerk

FRANJESSICA WILLIAMS,
Appellant

v.

THE STATE OF TEXAS,
Appellee

On Appeal from the 282nd Judicial District Court
of Dallas County, Texas
Cause No. F14-00534-S
The Honorable Andy Chatham, Judge Presiding

BRIEF FOR APPELLEE,
THE STATE OF TEXAS

Counsel of Record:

**Susan Hawk**
Criminal District Attorney
Dallas County, Texas

**G. Brian Garrison**
State Bar No. 24065276
Assistant District Attorney
Dallas County District Attorney's Office
133 N. Riverfront Blvd., LB 19
Dallas, TX 75207-4399
(214) 653-3600 (telephone)
(214) 653-3643 (fax)
Brian.Garrison@dallascounty.org

The State waives oral argument

# IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellant** | **Franjessica Williams** |
| **Appellant's Counsel at Trial** | **Caroline Simone**<br>101 S. Woodrow, Ste. 102<br>Denton, TX 75205<br><br>**Jose Noriega**<br>10300 N. Central Exwy.<br>Dallas, TX 75231 |
| **Appellant's Counsel on Appeal** | **Allan Fishburn**<br>211 N. Record St., Ste. 450<br>Dallas, TX 75202 |
| **State's Counsel at Trial** | **Eren Price**<br>**Summer Elmazi**<br>Assistant District Attorneys<br>Dallas County District Attorney's Office<br>133 N. Riverfront Blvd., LB 19<br>Dallas, TX 75207-4399 |
| **State's Counsel on Appeal** | **G. Brian Garrison**<br>Assistant District Attorney<br>Dallas County District Attorney's Office<br>133 N. Riverfront Blvd., LB 19<br>Dallas, TX 75207-4399 |

# TABLE OF CONTENTS

Identity of Parties and Counsel.................................................................i

Index of Authorities..............................................................................iii

Statement of the Case ...........................................................................1

Issues Presented.....................................................................................2

Statement of Facts ................................................................................2

Summary of the Argument ....................................................................6

Argument ..............................................................................................8

    1. The State's response to Appellant's first point of error: The evidence was sufficient to prove that Appellant intentionally and knowingly caused the death of J.L. by failing to provide him with hydration ...................8

    2. The State's response to Appellant's second point of error: The trial court did not err in charging the jury................................................12

    3. The State's response to Appellant's third point of error: The trial court had jurisdiction over Appellant's case................................................13

Prayer....................................................................................................16

Certificate of Service ............................................................................17

Certificate of Compliance......................................................................17

# INDEX OF AUTHORITIES

**Cases**

*Allen v. State*, 249 S.W.3d 680 (Tex. App. – Austin 2008, no pet.)...............9

*Atkinson v. State*, 107 S.W.3d 856 (Tex. App – Dallas 2003, no pet.) .........13

*Baldwin v. State*, Nos. 01-06-00861-62-CR, 2008 Tex. App. LEXIS 932 (Tex. App. – Houston [1st Dist.] Feb. 7, 2008, pet. ref'd) (not designated for publication)...............................................................................10, 11

*Bell v. State*, 326 S.W.3d 716 (Tex. App. – Dallas 2010, pet. dism'd)............8

*Bourque v. State*, 156 S.W.3d 675 (Tex. App. – Dallas 2005, pet. ref'd) ..........
.......................................................................................................14, 15

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) (plurality op.)........8

*Brown v. State*, 270 S.W.3d 564 (Tex. Crim. App. 2008)..............................8

*Chappel v. State*, No. 05-10-00629-CR, 2011 Tex. App. LEXIS 4658 (Tex. App. – Dallas Jun. 20, 2011, no pet.) (not designated for publication).........
.......................................................................................................13, 15

*Dallas County Dist. Attorney v. Does*, 969 S.W.2d 537 (Tex. App. – Dallas 1998, no pet.) ................................................................................14

*Dewberry v. State*, 4 S.W.3d 735 (Tex. Crim. App. 1999) .............................8

*Ex parte Edone*, 740 S.W.2d 446 (Tex. Crim. App. 1987)..........................14

*Hill v. State*, No. 05-09-00778-CR, 2010 Tex. App. LEXIS 1486 (Tex. App. – Dallas Mar. 3, 2010, no pet.) (not designated for publication)........13, 15

*Hultin v. State*, 351 S.W.2d 248 (Tex. Crim. App. 1961)...........................14

*Jackson v. Virginia*, 443 U.S. 307 (1979)................................................8, 9

*Lee v. State*, 21 S.W.3d 532 (Tex. App. – Tyler 2000, pet. ref'd)...................9

*Luquis v. State*, 72 S.W.3d 355 (Tex. Crim. App. 2002) ............................12

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)...............................9

*Pina v. State*, No. 08-05-00103-CR, 2006 Tex. App. LEXIS 9986 (Tex. App. – El Paso Nov. 16, 2006, pet. ref'd) (not designated for publication)...........................................................................................................12

*Stuhler v. State*, 218 S.W.3d 706 (Tex. Crim. App. 2007).............................9

*Vasquez v. State*, 272 S.W.3d 667 (Tex. App. – Eastland 2008, no pet.)...................................................................................................................12

*Ward v. State*, No. 05-14-00270-CR, 2015 Tex. App. LEXIS 3317 (Tex. App. – Dallas Apr. 3, 2015, no pet. h.) (not designated for publication).......................................................................................................13

**Statutes**

Tex. Code Crim. Proc. Ann. art. 20.09 (West 2005) ...................................14

Tex. Code Crim. Proc. Ann. art. 20.19 (West 2005) ...................................14

Tex. Code Crim. Proc. Ann. art. 37.07 (West Supp. 2014)..........................12

Tex. Gov't Code Ann. § 24.304 (West Supp. 2014)....................................14

Tex. Gov't Code Ann. § 74.093 (West 2013)..............................................14

Tex. Penal Code Ann. § 22.04 (West Supp. 2014) ......................................10

**TO THE HONORABLE COURT OF APPEALS:**

The State of Texas respectfully submits the instant brief in response to the brief of Franjessica Williams ("Appellant"), on behalf of Susan Hawk, the Criminal District Attorney of Dallas County, Texas.

## STATEMENT OF THE CASE

Appellant was charged by indictment with the offense of injury to a child – serious bodily injury.[1] Appellant entered a plea of not guilty to the charge.[2] The jury found Appellant guilty and sentenced her to incarceration for a period of fifty years.[3] Appellant filed a motion for new trial, which was denied by the trial court.[4] Appellant timely filed her notice of appeal.[5]

---

[1] C.R. at 8.
[2] III R.R. at 25.
[3] C.R. at 21, 29, 37.
[4] C.R. at 24.
[5] C.R. at 46.

1

## ISSUES PRESENTED

1.    Whether the evidence was sufficient to prove the culpable mental state beyond a reasonable doubt.

2.    Whether the trial court erred in instructing the jury on good conduct time.

3.    Whether the trial court had jurisdiction to hear Appellant's case.


## STATEMENT OF FACTS

J.L., Appellant's son, was two years old when he passed away.[6] James Penny testified that Appellant was one of his best friends.[7] Mr. Penny testified that he was at Appellant's home on the date of J.L.'s death.[8] Mr. Penny testified that J.L. had no bruises on his body.[9] Mr. Penny testified that Appellant had very high, unrealistic expectations of J.L; Appellant expected J.L. to feed himself.[10] A speech therapist testified that J.L. had a disability which hindered his ability to communicate and understand; however, Appellant believed that J.L. was simply arrogant and thick headed.[11] Mr. Penny testified that Appel-

---

[6] III R.R. at 34-35.
[7] III R.R. at 33.
[8] III R.R. at 49-50.
[9] III R.R. at 56; State's Ex. 4.
[10] III R.R. at 65.
[11] V R.R. at 69-70.

lant would "whoop" J.L. the way one would discipline an older child.[12] Mr. Penny testified that he never encouraged Appellant to tie up J.L.[13]

Doctor Mini Delashaw worked as an ER physician at Medical City on the day that Appellant brought J.L. in.[14] Dr. Delashaw testified that the circumstances of J.L.'s death raised a number of red flags. Dr. Delashaw testified that J.L. was cold and rigid and that he "clearly had been dead for a long time."[15] Dr. Delashaw testified that Appellant brought J.L. into the hospital through a "random hospital door" far removed from the clearly-marked emergency entrance.[16] Appellant stated that she had found J.L at the bottom of the stairs "tangled up in bands or string" and that she had "put him in time-out" the night before.[17] Dr. Delashaw testified that there was bruising all over J.L.'s body.[18] Dr. Delashaw testified that J.L. had ligature marks on his wrists and ankles, as if he had been tied up.[19] Dr. Delashaw testified that, if

---

[12] III R.R. at 66-67.
[13] III R.R. at 67.
[14] III R.R. at 80, 84.
[15] III R.R. at 84-85, 92.
[16] III R.R. at 86-87.
[17] III R.R. at 88.
[18] III R.R. at 90.
[19] III R.R. at 103-04.

she saw a child with the level of bruising she observed on J.L., she would have taken him to him the emergency room.[20]

Detective Briana Valentine investigated the death of J.L.[21] Det. Valentine testified that J.L. had bruises all over his body as well as ligature marks.[22] Det. Valentine interviewed Appellant at the hospital.[23] Appellant stated that she found J.L. in the morning and that he was tangled up in a ribbon.[24] Appellant stated that, the night before, she had put him in time-out and that he kept getting up.[25] Appellant stated that she fed herself that night but did not feed J.L.[26] Det. Valentine testified that she did not believe that Appellant's story accounted for what had happened to J.L.[27] Det. Valentine executed a search warrant at Appellant's home.[28] Det. Valentine testified that Appellant's home was extremely hot.[29] Det. Valentine testified that there were no ribbons at the base of the stairs.[30]

---

[20] III R.R. at 97.
[21] III R.R. at 112.
[22] III R.R. at 115-19.
[23] III R.R. at 121.
[24] III R.R. at 122.
[25] III R.R. at 122.
[26] III R.R. at 122.
[27] III R.R. at 125-26.
[28] III R.R. at 126-27.
[29] III R.R. at 132-33.
[30] III R.R. at 159.

Detective Corey Forman testified that he also investigated the death of J.L.[31] Det. Forman testified that J.L.'s body was heavily bruised and that he had ligature marks around his extremities.[32] Appellant admitted to Det. Forman that she was frustrated with J.L. and that she had spanked him several times.[33] Appellant ultimately admitted she had tied up J.L.[34]

Doctor Reade Quinton performed the autopsy on J.L.[35] Dr. Quinton testified that J.L. died as a result of dehydration and hyperthermia.[36] J.L.'s ribs were unnaturally prominent.[37] J.L.'s lips were flaky, consistent with dehydration.[38] Dr. Quinton testified that dehydration can cause serious bodily injury and even death and that J.L. would still be alive if he had had adequate hydration.[39] Dr. Quinton further testified that J.L. had a large quantity of fresh bruises on his body as well as ligature marks.[40] Dr. Quinton testified that the quantity of bruises indicated child abuse.[41]

---

[31] IV R.R. at 13.
[32] IV R.R. at 19.
[33] IV R.R. at 22, 67.
[34] IV R.R. at 45.
[35] IV R.R. at 93-94.
[36] IV R.R. at 125, 129-30.
[37] IV R.R. at 98.
[38] IV R.R. at 101.
[39] IV R.R. at 130-34.
[40] IV R.R. at 104, 107, 114, 118-21.
[41] IV R.R. at 115-16.

## SUMMARY OF THE ARGUMENT

With respect to Appellant's first point of error, the evidence was sufficient to prove the culpable mental state. The jury heard testimony that J.L. died of dehydration and hyperthermia and that he would still be alive if he had been provided adequate hydration. The jury heard testimony that Appellant did not feed J.L. on the night of his death and that she expected J.L. to feed himself. Appellant admitted to hitting J.L. and tying him up. J.L.'s injuries were consisted with child abuse.

With respect to Appellant's second point of error, the trial court did not reversibly err in charging the jury. The trial court charged the jury in accordance with the law. The charge specifically instructed the jury that, although the defendant may earn good conduct time, it could not be predicted how it might apply to the defendant; therefore, the jurors were not to consider how good conduct time might affect the Appellant's sentence. Under these circumstances, this Court cannot conclude that Appellant suffered egregious harm or that the good conduct time instruction violated her right to due process.

With respect to Appellant's third point of error, the 282nd Judicial District Court had jurisdiction over Appellant's case. The case was filed in the 282nd; it was never transferred from the 291st Judicial District Court.

## ARGUMENT

1. **The State's response to Appellant's first point of error: The evidence was sufficient to prove that Appellant intentionally and knowingly caused the death of J.L. by failing to provide him with hydration**

In reviewing the sufficiency of the evidence to support a conviction, an appellate court views all of the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[42] This standard, which is the sole standard for reviewing the sufficiency of the evidence in Texas criminal cases, gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[43]

The trier of fact is the exclusive judge of the weight and credibility of the evidence.[44] As such, the reviewing court may not re-evaluate the weight and credibility of the evidence or substitute its judgment for that of the factfinder.[45] Rather, the reviewing court presumes that the factfinder resolved any

---

[42] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[43] *Id.*; *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (concluding that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"); *Bell v. State*, 326 S.W.3d 716, 720 (Tex. App. – Dallas 2010, pet. dism'd) (adopting *Brooks*).

[44] *See Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008).

[45] *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

8

conflicting evidence in favor of the prosecution and defers to that resolution.[46] The reviewing court's role is that of a due process safeguard, ensuring only the rationality of the fact finder's finding of the essential elements of the offense beyond a reasonable doubt.[47]

The sufficiency of the evidence in both jury and bench trials is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case.[48] "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[49]

Injury to a child is a result-oriented offense requiring a mental state that relates not to the charged conduct but to the result of the conduct.[50] The State must prove that the defendant caused the result with the requisite mental state.[51] The factfinder may infer intent from the accused's acts and words as

---

[46] *Jackson*, 443 U.S. at 326.
[47] *See Allen v. State*, 249 S.W.3d 680, 688 (Tex. App. – Austin 2008, no pet.).
[48] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).
[49] *Id.*
[50] *See Stuhler v. State*, 218 S.W.3d 706, 718 (Tex. Crim. App. 2007).
[51] *Lee v. State*, 21 S.W.3d 532, 540 (Tex. App. – Tyler 2000, pet. ref'd).

well as the surrounding circumstances.[52] A jury may reasonably infer that the defendant intentionally inflicted the injury when the defendant fails to render aid known to be needed.[53] A reasonable inference also arises in the presence of proof that the defendant tried to conceal the conditions that led to the victim's injuries.[54]

Here, the indictment alleged that Appellant intentionally and knowingly caused the death of J.L. by failing to provide him with adequate hydration.[55] The evidence supporting Appellant's conviction was overwhelming.

- Dr. Quintion testified that J.L. died of dehydration and hyperthermia.[56]

- J.L. showed visible signs of dehydration and malnourishment. J.L.'s lips were flaky and his ribs protruded unnaturally from his body.[57]

- Mr. Penny testified that Appellant expected J.L. to feed himself and that her expectations of J.L were too high.[58]

- Appellant admitted to law enforcement that she fed herself before going to bed but that she did not feed J.L.[59]

---

[52] *See Baldwin v. State*, Nos. 01-06-00861-62-CR, 2008 Tex. App. LEXIS 932, at *12 (Tex. App. – Houston [1st Dist.] Feb. 7, 2008, pet. ref'd) (not designated for publication).
[53] *Id.*
[54] *Id.* at *13-14.
[55] C.R. at 8; *see* Tex. Penal Code Ann. § 22.04(a) (West Supp. 2014).
[56] IV R.R. at 125, 129-30.
[57] IV R.R. at 98-101.
[58] III R.R. at 65-66.
[59] III R.R. at 122.

- Dr. Quinton testified that J.L. would still be alive if he had been provided with water.[60]

- Law enforcement testified that it was a hot Texas day on the date of J.L.'s death and that Appellant's apartment was uncomfortably hot.[61] Det. Valentine was unable to spend a significant amount of time in Appellant's apartment due to the heat.[62]

- J.L.'s body was heavily bruised.[63] Mr. Penny testified that J.L. was not bruised on the day of his death.[64] Both Dr. Delashaw and Dr. Quinton testified that J.L.'s injuries were consistent with child abuse.[65]

- J.L. had ligature marks on his extremities.[66] When asked, Appellant initially stated that she found J.L. tangled up in ribbons at the base of the stairs.[67] However, she ultimately admitted that she had spanked J.L. repeatedly and had tied him up.[68] Det. Valentine testified that she found no ribbons, rope, or strings when she searched Appellant's home.[69] Appellant's initial story was an attempt to conceal the nature of J.L.'s death from medical professionals and law enforcement.[70]

- Dr. Delashaw testified that Appellant did not bring J.L into the emergency room, as a normal person would have done, and that J.L. had been dead for some time.[71]

---

[60] IV R.R. at 130-34.
[61] III R.R. at 132-33; IV R.R. at 39.
[62] III R.R. at 132-33; IV R.R. at 39.
[63] III R.R. at 90; State's Ex. 4.
[64] III R.R. at 56.
[65] III R.R. at 97; IV R.R. at 115-16.
[66] III R.R. at 103-04, 115-19.
[67] III R.R. at 88, 122.
[68] IV R.R. at 22, 45, 67.
[69] III R.R. at 159.
[70] *See Baldwin*, Nos. 01-06-00861-62-CR, 2008 Tex. App. LEXIS 932, at *13-14.
[71] III R.R. at 84-87.

The foregoing evidence was sufficient to permit the jury to rationally conclude that Appellant intentionally and knowingly caused the death of J.L. by failing to provide him with adequate hydration.[72] Accordingly, this Court should overrule Appellant's first point of error.

## 2. The State's response to Appellant's second point of error: The trial court did not err in charging the jury

In her second point of error, Appellant argues that the trial court erred by informing the jury about good conduct time because she was ineligible for good conduct time.[73] She further argues that even though she failed to object, the "egregious harm" standard does not apply because the error was in violation of the United States Constitution. In *Luquis v. State*, the court examined these arguments and concluded there was no violation of a defendant's due process rights by instructing the jury in accordance with statute.[74] Similarly, in *Atkinson v. State*, this Court concluded that "[w]ithout evidence to the contrary, we may assume the jury was not confused or mislead by the charge and did not consider the possibility of good conduct time when assessing [the de-

---

[72] *See, e.g., Vasquez v. State*, 272 S.W.3d 667, 670-72 (Tex. App. – Eastland 2008, no pet.); *Pina v. State*, No. 08-05-00103-CR, 2006 Tex. App. LEXIS 9986, at *28-31 (Tex. App. – El Paso Nov. 16, 2006, pet. ref'd) (not designated for publication).
[73] Appellant's Br. at 32.
[74] *Luquis v. State*, 72 S.W.3d 355, 368 (Tex. Crim. App. 2002); *see* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (West Supp. 2014).

fendant's] punishment."[75] In *Atkinson*, as here, the jury charge specifically instructed the jury that, although the defendant may earn good conduct time, it could not be predicted how it might apply to the defendant; therefore, the jurors were not to consider how good conduct time might affect the defendant's sentence.[76] Under these circumstances, this Court cannot conclude that Appellant suffered egregious harm or that the good conduct time instruction violated her right to due process.[77] Accordingly, this Court should overrule Appellant's second point of error.

### 3. The State's response to Appellant's third point of error: The trial court had jurisdiction over Appellant's case

This Court should overrule Appellant's third point of error because the 282nd Judicial District Court did not lack jurisdiction to adjudicate Appellant's case. This Court has already decided this issue.[78] A grand jury formed and impaneled by a district judge inquires "into all offense liable to indictment" and hears all the testimony available before voting on whether to indict

---

[75] *Atkinson v. State*, 107 S.W.3d 856, 859-60 (Tex. App – Dallas 2003, no pet.).
[76] *See id.*
[77] *Ward v. State*, No. 05-14-00270-CR, 2015 Tex. App. LEXIS 3317, at *13-15 (Tex. App. – Dallas Apr. 3, 2015, no pet. h.) (not designated for publication).
[78] *Chappel v. State*, No. 05-10-00629-CR, 2011 Tex. App. LEXIS 4658, at *1-3 (Tex. App. – Dallas Jun. 20, 2011, no pet.) (not designated for publication); *Hill v. State*, No. 05-09-00778-CR, 2010 Tex. App. LEXIS 1486, at *3 (Tex. App. – Dallas Mar. 3, 2010, no pet.) (not designated for publication).

an accused.[79] A grand jury is "often characterized as an arm of the court by which it is appointed rather than an autonomous entity."[80] After the conclusion of testimony, a grand jury votes "as to the presentment of an indictment."[81] Following presentment, an indictment is filed in a court with competent jurisdiction.[82] In counties having two or more district courts, the judges of the courts may adopt rules governing the filing, numbering, and assignment of cases for trial and the distribution of the courts' work they consider necessary and desirable to conduct the business of the courts.[83] Thus, while a specific district court may impanel a grand jury, this does not mean that all indictments returned by that grand jury must or will be filed in the impaneling district court.[84]

In the case *sub judice*, the record establishes that the Grand Jury, which indicted Appellant, was impaneled by the 291st Judicial District Court.[85] The indictment, however, was filed in and, ultimately, adjudicated in the 282nd

---

[79] Tex. Code Crim. Proc. Ann. arts. 20.09 (West 2005), 20.19 (West 2005); *Ex parte Edone*, 740 S.W.2d 446, 448 (Tex. Crim. App. 1987).

[80] *Dallas County Dist. Attorney v. Does*, 969 S.W.2d 537, 542 (Tex. App. – Dallas 1998, no pet.).

[81] Tex. Code Crim. Proc. Ann. art. 20.19.

[82] *See Hultin v. State*, 351 S.W.2d 248, 255 (Tex. Crim. App. 1961).

[83] *See* Tex. Gov't Code Ann. § 24.003 (West Supp. 2014); *see also* § 74.093 (West 2013) (addressing adoption of local rules of administration to provide, in part, for assignment, docketing, transfer, and hearing of all cases).

[84] *See Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App. – Dallas 2005, pet. ref'd).

[85] C.R. at 8.

Judicial District Court.[86] Nothing in the record indicates that the instant case was ever filed in or appeared on the docket of the 291st Judicial District Court. As Appellant's case was never transferred into the 282nd Judicial District Court, Appellant's sixth point of error is moot. The 282nd Judicial District Court had jurisdiction over Appellant's case.[87] Accordingly, this Court should overrule Appellant's sixth point of error.

---

[86] C.R. at 8, 21.
[87] *See Bourque*, 156 S.W.3d at 678; *Chappel*, No. 05-10-00629-CR, 2011 Tex. App. LEXIS 4658, at *1-3; *Hill*, No. 05-09-00778-CR, 2010 Tex. App. LEXIS 1486, at *3.

# PRAYER

The State of Texas prays that this Court will overrule Appellant's three points of error and affirm Appellant's conviction.

Respectfully submitted,

**Susan Hawk**
Criminal District Attorney
Dallas County, Texas

**G. Brian Garrison**
State Bar No. 24065276
Assistant District Attorney
Dallas County District Attorney's Office
133 N. Riverfront Blvd., LB 19
Dallas, TX 75207-4399
(214) 653-3600 (telephone)
(214) 653-3643 (fax)
Brian.Garrison@dallascounty.org

16

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing brief has been served on Appellant's Counsel on Appeal, the Hon. Allan Fishburn, 211 N. Record St., Ste. 450, Dallas, TX 75202 by electronic service on this the 8th day of May, 2015.

_G. Brian Garrison_
G. Brian Garrison

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief, inclusive of all its contents, is 3,829 words in length, according to Microsoft Office, which was used to prepare this brief, and that this brief complies with the word-count limit and typeface conventions required by the Texas Rules of Appellate Procedure.

_G. Brian Garrison_
G. Brian Garrison