ACCEPTED
05-14-01460-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/1/2015 11:17:29 AM
LISA MATZ
CLERK

5th Court of Appeals
FILED: 6/4/2015
Lisa Matz, Clerk

*The State Requests Oral Argument Only If Appellant Argues*

No. 05-14-01460-CR

IN THE COURT OF APPEALS
FOR THE FIFTH DISTRICT OF TEXAS
AT DALLAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/1/2015 11:17:29 AM
VOID MH
LISA MATZ
Clerk

GUADALUPE MARTINEZ,
Appellant

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/1/2015 11:17:29 AM
LISA MATZ
Clerk

vs.

THE STATE OF TEXAS,
Appellee

*On appeal from the 283rd Judicial District Court of Dallas County
In Cause No. F06-68467*

STATE'S BRIEF

*Counsel of Record:*

SUSAN HAWK
CRIMINAL DISTRICT ATTORNEY
DALLAS COUNTY, TEXAS

PATRICIA POPPOFF NOBLE
ASSISTANT DISTRICT ATTORNEY
STATE BAR NO. 15051250
FRANK CROWLEY COURTS BLDG
133 N. RIVERFRONT BLVD,LB-19
DALLAS, TEXAS 75207-4399
(214) 653-3634
pnoble@dallascounty.org

*Attorneys for the State of Texas*

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................iii

SUMMARY OF ARGUMENT.............................................................1

ARGUMENT....................................................................................1

RESPONSE TO POINT ONE...............................................................1
The trial court did not err by denying the motion to dismiss the indictment on the ground that Appellant's rights under Article III of the Interstate Agreement on Detainers Act had been violated.

RESPONSE TO POINT TWO................................................................1
The trial court did not err by denying the motion to dismiss the indictment on the ground that Appellant's rights under Article IV of the Interstate Agreement on Detainers Act had been violated.

RESPONSE TO POINT THREE............................................................23
The evidence is sufficient to sustain Appellant's conviction.

RESPONSES TO POINT 4..................................................................32
Appellant failed to file a plea to jurisdiction in the 283rd Judicial District Court, and he waived Point 4's complaint.

The 283rd District Court which tried Appellant's cases did not lack jurisdiction due to an improper transfer to its docket.

PRAYER.........................................................................................35

CERTIFICATE OF SERVICE AND WORD COUNT..................................36

# INDEX OF AUTHORITIES

**Cases**

*Alabama v. Bozeman,*
 533 U.S. 146, 121 S.Ct. 2079, 150 L.Ed. 2d 188 (2001) ............................8

*Bell v. State,*
 768 S.W.2d 790 (Tex. App. – Houston [14th Dist.] 1989, pet. ref'd) .......20

*Bourque v. State,*
 156 S.W.3d 675 (Tex. App. – Dallas 2005, pet. ref'd) ................................35

*Bryant v. State,*
 819 S.W.2d 927 (Tex. App. – Houston [14th Dist.] 1991, pet. ref'd) .......15

*Camp v. United States,*
 587 F.2d 397 (8th Cir.1978) ..............................................................................20

*Cooney v. Fulcomer,*
 886 F.2d 41 (3d Cir. 1989) ................................................................................20

*Cuyler v. Adams,*
 449 U.S. 433, 101 S. Ct. 703, 66 L.Ed.2d 641 (1981) ................................8

*Dallas County Dist. Attorney v. Doe,*
 969 S.W.2d 537 (Tex. App. – Dallas 1998, no pet.) ....................................34

*Dewberry v. State,*
 4 S.W.3d 735 (Tex. Crim. App. 1999) ...................................................28, 29, 30

*Ex parte Edone,*
 740 S.W.2d 446 (Tex. Crim. App. 1987) ......................................................34

*Ex parte Saylor,*
 734 S.W.2d 55 (Tex. App. – Houston [1st Dist.] 1987, no pet.) ................19

*Gray v. Benson,*
 608 F.2d 825 (10th Cir. 1979) ..........................................................................20

*Gullatt v. State,*
 Nos. 05-13-01515-CR & 05-13-01516-CR, 2014 Tex. App. LEXIS
 13832 (Tex. App. – Dallas Dec. 29, 2014, no pet.) (mem. op., not
 designated for publication) ...............................................................................33

*Huffines v. State,*
    646 S.W.2d 612 (Tex. App. – Dallas 1983, pet. ref'd) ................................ 18

*Hultin v. State,*
    351 S.W.2d 248 (Tex. Crim. App. 1961) ......................................................... 34

*In re Lopez,*
    No. 13-11-00110-CR, 2011 Tex. App. LEXIS 1811 (Tex. App. – Corpus
    Christi Mar. 9, 2011, no pet.) (mem. op., not designated for
    publication) ........................................................................................................ 11

*Ives v. State,*
    Nos. 05-13-00615-CR & 05-13-00616-CR, 2014 Tex. App. LEXIS 3749
    (Tex. App. – Dallas Mar. 31, 2014,no pet.) (mem. op., not designated for
    publication) ........................................................................................................ 33

*Jackson v. Virginia,*
    443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ................................ 28

*Johnson v. State,*
    176 S.W.3d 74 (Tex. App. – Houston [1st Dist.] 2004, pet. ref'd) ............. 31

*Laster v. State,*
    275 S.W.3d 512 (Tex. Crim. App. 2009) ......................................................... 28

*Lemasurier v. State,*
    91 S.W.3d 897 (Tex. App.- Fort Worth 2002, pet. ref'd) ............................ 33

*Lindley v. State,*
    33 S.W.3d 926 (Tex. App. – Amarillo 2000, pet. ref'd) ................................ 8

*Marshall v. State,*
    210 S.W.3d 618 (Tex. Crim. App. 2006) ................................................... 29, 30

*Mayes v. State,*
    Nos. 03-10-00101-CR & 03-10-00102-CR, 2011 Tex. App. LEXIS 2075
    (Tex. App. – Austin Mar. 18, 2011, no pet.)(mem. op., not designated
    for publication) ................................................................................................. 31

*McNulty v. State,*
    No. 05-02-00635-CR, 2003 Tex. App. LEXIS 1802 (Tex. App. – Dallas
    Feb. 28, 2003, no pet.) (not designated for publication) ........................... 11

*Moreno v. State,*
    755 S.W.2d 866, 867 (Tex. Crim. App. 1988) ............................................... 28

*Morganfield v. State,*
919 S.W.2d 731 (Tex. App. – San Antonio 1996, no pet.) ......................... 17

*New York v. Hill.*
528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) ........... 20, 21, 22, 33

*Petrick v. State,* 832 S.W.2d 767 (Tex. App. – Houston [1st Dist.] 1992,
pet. ref'd), *overruled in part as stated on other ground, Blackshear v.
State,* 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) .................................. 21

*Rexroad v. State,*
Nos. 05-99-01991-CR & 05-99-02004-CR, 2000 Tex. App. LEXIS 7231
(Tex. App. – Dallas Oct. 26, 2000, pet. ref'd) (not designated for
publication) .......................................................................................... 21

*Santos v. State,*
116 S.W.3d 447 (Tex. App. – Houston [14th Dist.] 2003, pet. ref'd) ....... 31

*Smith v. Hooey,*
393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) ............................ 12, 13

*Snyder v. State,*
No. 08-04-00246-CR, 2005 Tex. App. LEXIS 7750 (Tex. App. – El Paso
Sept. 22, 2005, no pet.) (not designated for publication) ........................... 16

*State v. Powell,*
971 S.W.2d 577 (Tex. App. – Dallas 1998, no pet.) .................................... 21

*State v. Votta,*
299 S.W.3d 130 (Tex. Crim. App. 2009) ...................................................... 8, 14

*United States v. Black,*
609 F.2d 1330 (9th Cir. 1979) ...................................................................... 20

*United States v. Olano,*
507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) .......................... 20

*United States v. Scallion,*
548 F.2d 1168 (5th Cir. 1977) ...................................................................... 20

**Statutes**

Tex. Code Crim. Proc. Ann. Art. 51.14 (West 2006) .......................... 2, 8, 9, 11

Tex. Code Crim. Proc. Ann. art. 51.14, Art. III(a), (c) .............................. passim

Tex. Code Crim. Proc. Ann. art. 51.14, Art. IV(c)............................17, 18, 21, 23

Tex. Code Crim. Proc. Ann. arts. 20.09, 20.19 (West 2005) .........................34

Tex. Code Crim. Proc. Ann., art. 51.14, Art. III(b) ..............................................15

Tex. Gov't Code Ann. §74.093 (West 2013).........................................................34

**TO THE HONORABLE COURT OF APPEALS:**

The State of Texas submits this brief in reply to the brief of Appellant.

## SUMMARY OF ARGUMENT

Appellant failed to demonstrate that his rights under Articles III and IV of the Interstate Agreement on Detainers Act were violated. Thus, the trial court did not abuse its discretion by overruling the motion to dismiss the indictment. Based on the eyewitness testimony and other circumstances surrounding the offense, the jury had sufficient credible evidence to support the conclusion that Appellant was correctly identified as the person who committed the offense. The trial court had jurisdiction of the instant case.

## ARGUMENT

### RESPONSE TO POINT ONE
**The trial court did not err by denying the motion to dismiss the indictment on the ground that Appellant's rights under Article III of the Interstate Agreement on Detainers Act had been violated.**

### RESPONSE TO POINT TWO
**The trial court did not err by denying the motion to dismiss the indictment on the ground that Appellant's rights under Article IV of the Interstate Agreement on Detainers Act had been violated.**

1

*Appellant's Contentions*

In two related points, Appellant contends that the indictment in the present case should have been dismissed because of the State's failure to follow Articles III and IV of the Interstate Agreement on Detainers Act (hereinafter IADA) found in Tex. Code Crim. Proc. Ann. Art. 51.14 (West 2006). Appellant's first point alleges that upon his mailing a request for a speedy trial, the State failed to bring him to trial within 180 days, as required under Article III of the IADA, and, therefore, the trial court erred by failing to dismiss the indictment. Appellant's brief at 33-36. In his second point, Appellant contends that the trial court erred by failing to dismiss his indictment under Article IV of the IADA upon his showing that the State failed to bring him to trial within 120 days of his transfer from Oklahoma to the Dallas County jail. Appellant's brief at 36-39.

*Pertinent Facts*

On September 12, 2006, Appellant was indicted in Cause Numbers F06-68467 and F06-68468 for committing two aggravated robberies with a deadly weapon against two women in Dallas County, Texas on July 20, 2006. (CR: 10-11).

On July 22, 2009, Dallas County Sheriff Lupe Valdez informed a Lawton Oklahoma correctional center that she had been advised that Appellant was incarcerated there and she requested that a detainer be placed against Appellant, who had been indicted in two causes for aggravated robbery with a deadly weapon in Dallas, Texas. See Defendant's Exhibit 2 at RR4: 21.

On April 23, 2013, Appellant, representing himself, mailed a letter addressed to the "Clerk of the Court" at the Frank Crowley Courts Building in Dallas, Texas informing the clerk that there was an outstanding warrant for his arrest for two aggravated robberies in Dallas County. Three copies of a motion "for a speedy trial/or dismissal of charges" were attached to his letter. Appellant requested that the clerk return to Appellant a stamped copy showing that his motion was filed in a court. Appellant addressed the motion to the "District Court of Dallas County State of Texas." The motion states that Appellant is incarcerated in a facility in McAlester, Oklahoma. It states that he is the subject of an outstanding arrest warrant in Dallas County. The motion requests "a fast and speedy trial in accordance with Article I, Section 10 of the Texas Constitution," or in the alternative, to order that the

3

charges pending in the Dallas County cases "be dismissed and the detainer warrent [sic] be withdrawn," citing *Smith v. Hooey,* 393 U.S. 374.  See Defendant's Exhibit 2 at RR4: 21.

On December 3, 2013, Assistant District Attorney Christopher Pryor, who tried this case, filed a "request for temporary custody" informing the warden at the Oklahoma correctional facility where Appellant was incarcerated that he was charged by indictment with aggravated robbery and requesting that Pryor be given temporary custody of Appellant under the IADA until he is tried in that cause. The request is signed by Judge Rick Magnis who presided over the trial in the 283rd Judicial District Court.  See Defendant's Exhibit 1 at RR4: 20.

On March 7, 2014, Appellant was transferred to the Dallas County Jail.  See Defendant's Exhibit 1 at RR4: 20.

On March 10, 2014, the Honorable Rick Magnis, presiding judge of the 283rd Judicial District Court having jurisdiction of the pending aggravated robbery cases for which Appellant was indicted, appointed Mr. L. Patrick Davis to represent Appellant. See Motion to Supplement Clerk's Record.

On March 28, 2014, Mr. Davis signed an agreement to reset the two aggravated robbery cases to April 4, 2014. Thereafter, Davis signed 5 additional reset agreements which pushed back the final trial date to June 6, 2014. See Defendant's Exhibit 3 at RR4: 22.

On June 9, 2014, Judge Rick Magnis appointed Mr. Allan Fishburn to represent Appellant in the aggravated robbery cases. See Motion to Supplement Clerk's Record.

On June 10, 2014, Mr. Fishburn signed an agreement to reset the robbery cases for trial on November 3, 2014. See Motion to Supplement Clerk's Record.

On October 24, 2014, Appellant, through his new attorney Allan Fishburn, filed a motion to dismiss the indictments, alleging that "the prosecution has failed to comply with the requirements of Tex. Code Crim. Proc. Ann. Article 51.14." (CR: 46).

On October 31, 2014, the trial court held a hearing on the motion to dismiss filed by Mr. Fishburn who stated at the commencement of the hearing: "Today we are asking the Court to rule on our second motion for speedy trial, having abandoned the first, the second one being related to the Interstate Agreement on

5

Detainers, Texas Code of Criminal Procedure Article 51.14 and that's before the Court." (RR4: 4). Although counsel specifically stated that Appellant's earlier pro se motion to dismiss had been abandoned and was not before the court in the hearing, he nevertheless relied on the pro se motion to argue that the State violated Article III of the statute by not trying Appellant within 180 days of his mailing notice of his demand for a speedy trial to the Clerk of the Court at the Frank Crowley Courts Building in Dallas, Texas. Mr. Fishburn further argued that Appellant was not required to comply with the additional statutory notice requirements of Article III, subsection (a) to trigger the running of the 180-day time limit to bring him to trial. The State disagreed and argued to the court that Appellant was entitled to represent himself, but his pro se motion was insufficient to support the allegation of an Article III violation. The prosecutor argued that if Appellant made a request on his own for a speedy trial under Article III of the IADA, he had to comply with the statutory notice requirements of Article III, subsection (a). (RR4: 6-10).

At the hearing, Mr. Fishburn also asserted that the State violated the IADA by not trying Appellant within 120 days of the

6

date he was brought back to Texas as required by Article IV. He claimed that the 120 days expired on June 1, 2014. (RR4: 14). Counsel introduced and had admitted Defendant's Exhibits Nos. 1, 2, and 3 to support his claims. (RR4: 4, 22).

The trial court examined Exhibit 3, and found that Mr. Davis, Appellant's first attorney, signed a continuous series of pass slips agreeing to reset the trial of the cases. Mr. Fishburn was wrong about the date on which the 120 days expired. Davis' last agreed setting for the trial was June 6, 2014. The court also noted that was about the time that Mr. Fishburn was appointed. (RR4: 16-17). The trial court was informed that 120 days from Davis' final agreed reset date for trial, June 6, 2014, was September 13, 2014. (RR4: 17). It may be assumed that the court was aware of, although it was not mentioned in the hearing, an additional pass slip signed by Mr. Fishburn on June 10, 2014, a day after he was appointed to represent Appellant, agreeing to reset the trial date to November 3, 2014. See Motion to Supplement Clerk's Record.

The motion to dismiss the indictments was denied. (RR4: 18).

*Principles of Law, Application, and Conclusion*

Article III Claim Properly Overruled

7

The IADA is a congressionally-sanctioned compact between the United States and the states. *Cuyler v. Adams,* 449 U.S. 433, 442, 101 S. Ct. 703, 66 L.Ed.2d 641 (1981). Texas has adopted the IADA in Tex. Code Crim. Proc. Ann. art. 51.14 (West 2006). The IADA outlines the cooperative procedure between the states to be used when one state is seeking to try a prisoner who is currently imprisoned in a penal or correctional institution of another state. *State v. Votta,* 299 S.W.3d 130, 134-35 (Tex. Crim. App. 2009).

Courts have strictly applied the provisions of the IADA. *Alabama v. Bozeman,* 533 U.S. 146, 153, 121 S.Ct. 2079, 150 L.Ed. 2d 188 (2001). The burden rests on the prisoner to demonstrate compliance with the procedural requirements of Article III in order to benefit from its provisions. *Lindley v. State,* 33 S.W.3d 926, 930 (Tex. App. – Amarillo 2000, pet. ref'd)(finding where defendant knew of the appointment of an attorney *pro tem* and still wished to exercise his rights under the IADA, it became his duty to notify the appropriate prosecuting officer, and since he failed to send his IADA request to the appropriate officer, the attorney pro tem instead of the clerk of the court and the District Attorney's office, his rights under the IADA were not violated).

Under the IADA, a prisoner may make a request for final disposition of a pending case in another jurisdiction. If the defendant properly makes the request for final disposition, he must be tried for the offense within 180 days or the charge must be dismissed with prejudice. Tex. Code Crim. Proc. Ann. art. 51.14, Art. III(a), (c). To request final disposition under Article III, the defendant must cause to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment. *Id.* Article III(a). Appellant contends that the only issue concerning the alleged violation of Article III is whether his mailing his request for a speedy trial means he "caused to be delivered" his request as the statute requires. But that is not the only issue in determining the alleged violation. Under Article III, a properly delivered request must be accompanied by a certificate of the appropriate official having custody of the prisoner stating the following: (1) the term of commitment under which the prisoner is being held; (2) the time already served; (3) the time remaining to be served on the sentence; (4) the amount of good time earned; (5) the time of parole eligibility

9

of the prisoner; and (6) any decision of the state parole agency relating to the prisoner. *Id.*

Appellant argues that the 180-day time limit of Article III began to run when he mailed his letter and motion to the clerk of the court in Dallas County because he did everything he must do to satisfy the IADA requirement that he "caused to be delivered" his request for transfer under Article III. Appellant's brief at 35. But, Appellant would have the court assume that the sufficiency of his act of delivery equates with the sufficiency of the form of the request under Article III. It does not.

The statute provides that the defendant can satisfy the requirement for "sending" the written notice and request for final disposition under Article III by giving it to the official having custody of him, who must then forward it to the appropriate prosecuting official and court via registered or certified mail. *Id.* Article III(b). However, the defendant may send the request to the court and prosecutor of the other jurisdiction himself, but if he does so, he is responsible for seeing that the notice is sent in the form required by the statute. *See McNulty v. State,* No. 05-02-00635-CR, 2003 Tex. App. LEXIS 1802, at *5 (Tex. App. – Dallas Feb. 28, 2003, no pet.)

(not designated for publication)(Defendant argued that this letter to the district attorney triggered the IADA, but the appellate court found that although his letter specifically mentioned Article 51.14, defendant failed to comply with the provisions of the IADA because his letter was not mailed via registered or certified mail, return receipt requested, defendant only sent his letter to the county district attorney; thus, the letter was not delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction, the letter was not accompanied by a certificate from the appropriate officer having custody of defendant, the letter failed to disclose information as required by subsection (a) of Article III); *In re Lopez,* No. 13-11-00110-CR, 2011 Tex. App. LEXIS 1811, at *8-9 (Tex. App. – Corpus Christi Mar. 9, 2011, no pet.) (mem. op., not designated for publication) (inmate who was presently incarcerated in federal prison in South Carolina and had an outstanding detainer from Texas claimed that he had filed a speedy trial motion, which was not ruled on, and that the county district attorney's failure to comply with the IADA denied him the right to a speedy trial, but the court denied mandamus relief as it could not determine from the record whether the required procedure was

11

followed in transmitting the inmate's documents to the trial court and whether the trial court received all of the required documentation under the statute, and under those circumstances, the court could not conclude that the trial court abused its discretion in failing to rule on the speedy trial motion).

In the hearing on defense counsel's motion to dismiss, counsel stated that the defense had abandoned Appellant's earlier pro se motion to dismiss, but he used the fact that Appellant had made this request for a speedy trial to argue that this triggered the time limitations of Article III. He asserts this position again on appeal.

However, Appellant's pro se motion does not refer to the IADA, and it does not in any other way invoke his rights under the IADA. The motion relies on the right to a speedy trial provided by the Texas Constitution. In the alternative, Appellant requested that he be relieved of a "detainer warrant." Appellant cited *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) for additional authority to support his request. In *Smith v. Hooey,* a prisoner was indicted in Texas on state charges while serving a sentence at a federal penitentiary. For the next six years, the defendant made

repeated requests for a speedy trial but the Texas authorities did nothing to advance the matter (even though they knew the prisoner's whereabouts). When the petitioner sought a dismissal, the State asserted that it had no obligation to gain custody of the defendant while he was imprisoned by another sovereign. The Supreme Court disagreed. The Court held that when a defendant demands a speedy trial, the Sixth Amendment right to a speedy trial required the State to make a diligent, good faith effort to bring him before a state court for trial even if another sovereign ultimately might decline to grant such custody. *Id.* at 383. The Interstate Agreement on Detainers, which obligates its signatories, upon formal request, to release an inmate to stand trial in another jurisdiction, did not enter into this decision. The federal government did not become a party to that compact until after *Smith v. Hooey* was decided. See 18 U.S.C., App. §2. Thus, neither Appellant's letter nor his motion requests a disposition of the indictments in compliance with Article III of the IADA.

Even if Appellant's motion could be understood to be a request brought under the IADA provisions, Appellant was not entitled to a dismissal of his cases for failure to comply with Article III because

13

he did not comply with the mandates of the IADA. At the hearing, the State specifically contended that the provisions of Article III were not triggered by the pro se request for a speedy trial because Appellant failed to do the following, as required by the IADA: (1) attach the statutorily mandated "certificate," which must contain Appellant's term of commitment, time served, time remaining to be served, good time earned, date of parole eligibility, and any decision of the state parole agency; and (2) forward the certificate to the proper prosecuting authority and the court by registered or certified mail, return receipt requested. (RR4: 9). Tex. Code Crim. Proc. Ann. art. 51.14, Art. III(a), (b); *Votta,* 299 S.W.3d at 135. Rather, the motion merely contains information regarding Appellant's incarceration in Oklahoma and the cause numbers of the pending Texas cases. At the hearing, and again on appeal, Appellant seems to contend his compliance failures are merely technical, and his failures should not preclude a dismissal. Appellant's brief at 36 (stating Article III should be interpreted to mean that when the prisoner's act of transmission of the request is complete the 180 days begins to run). There's no merit to this argument. *See Bryant v. State,* 819 S.W.2d 927, 930-31 (Tex. App. – Houston [14th Dist.]

14

1991, pet. ref'd), where the court specifically held letters to the court and prosecutor stating the prisoner's desire for a speedy trial, a final disposition, and dismissal were insufficient under the IADA, and, therefore, the prisoner was not entitled to a dismissal because the prisoner failed to include the statutorily required certificate or the information that should have been included. By this point, Appellant advocates the kind of exception the *Bozeman* Court refused to accept in some form of less than absolute compliance with the statute's mandatory language. Article III(b) specifically states the 180-day deadline applies only when the prisoner *shall* have caused to be delivered to the prosecutor and the court his request for final disposition, which *shall* include the certificate described in Article III(a) and *shall* be sent by registered or certified mail, return receipt requested. Tex. Code Crim. Proc. Ann. art. 51.14, Art. III(a), (b) (emphasis added). The use of "shall" is exactly what the Supreme Court held militated against an implicit exception to the IADA.

Because Appellant did not comply with the statutorily mandated requirements of the IADA, the 180-day deadline never commenced. Accordingly, because Appellant did not comply with

15

the IADA, the trial court did not err in denying his motion to dismiss, and this Court should overrule Point One. *See Snyder v. State,* No. 08-04-00246-CR, 2005 Tex. App. LEXIS 7750, at *1, 4 (Tex. App. – El Paso Sept. 22, 2005, no pet.) (not designated for publication)(finding a prisoner may deliver his request directly to the court and the prosecuting attorney, rather than to the warden; however, when a prisoner takes it upon himself to deliver the request for final disposition to the prosecutor and the court, he must do so in the proper form and include the statutorily required information, and overruling the complaint about the violation of the statute).

Article IV Claim Properly Overruled

Article IV(c) of the IADA provides: In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. Article V(c) provides that if a person is not brought to trial within 120 days, the indictment must be dismissed with prejudice. However, tolling of the 120-day period

16

occurs if the trial court grants a necessary or reasonable continuance after a showing of good cause is made in open court, with the defendant or his attorney present. Tex. Code Crim. Proc. Ann. art. 51.14, Art. IV(c); *Morganfield v. State,* 919 S.W.2d 731, 733 (Tex. App. – San Antonio 1996, no pet.). In *Morganfield,* the court concluded the length of the continuance can be subtracted from the total number of days between the book-in date and the first day of trial. *Id.* at 735.

Appellant makes the following argument that the continuances reflected in this record do not toll the 120-day statutory period:

> Appellant was booked into the Dallas County jail on March 7, 2014. At the hearing on the motion the [S]tate pointed out that several pass slips had been filed by Appellant after March 7, 2014. Appellant argued that none of those were executed by present counsel who did not pass the case but did set it for trial so as not to further delay disposition in the event the motion was denied. The State argues the passes tolled the statute, including the trial setting. Appellant is correct.
>
> The [t]rial setting was not a continuance under <u>article 54.14[sic] article IV (c).</u> The right to assert the deadline for trial can only be forfeited by the defendant "explicitly or by affirmative request for treatment that is contrary to or inconsistent with [those deadlines]". <u>Walker v. State,</u> 201 S.W.3rd 841 (Tex. App. – Waco 2006).

Appellant's brief at 37-38.

17

As an initial response to this claim, it is clear that Appellant wishes to win a dismissal by characterizing his newly-appointed counsel's agreement on the day after he was appointed to represent Appellant to reset the trial date from June 6, 2014 to November 3, 2014 as a "trial setting" rather than a "continuance." But that is not what the record reflects. Newly-appointed counsel signed a form addressed to the trial court with jurisdiction of the cases which stated that he and the attorney for the State "request a continuance of this case(s)" to November 3, 2014. Moreover, any distinction between "setting" the trial for a later date and asking for a "continuance" is one without any significance under the statute and the pertinent caselaw. The fact that newly-appointed counsel was granted an agreed postponement of the trial date in order to prepare to go to trial, rather than for some other reason, such as a need to delay the trial due to the attorney's heavy caseload or personal problems, does not matter for purposes of the IADA. All "necessary or reasonable" continuances are treated the same under Article IV; they toll the 120-day deadline. Tex. Code Crim. Proc. Ann. art. 51.14, Art. IV(c); *see Huffines v. State,* 646 S.W.2d 612, 613 (Tex. App. – Dallas 1983, pet. ref'd) ("agreed resettings," even

without an explanation therefor provided by the record, constituted "necessary and reasonable" continuances for purposes of tolling IAD deadline); *Ex parte Saylor,* 734 S.W.2d 55, 57 (Tex. App. – Houston [1st Dist.] 1987, no pet.)(same). Appellant has no authority to show that the final continuance given to Mr. Fishburn upon his appointment to represent Appellant does not toll the 120-day time period.

Appellant also argues that the deadline was not tolled by the continuances in the record because he did not personally participate in obtaining them. It should be noted that Appellant relies on a Waco Court opinion in *Walker* for the proposition that a defendant must personally agree to a trial date outside the 120-day period to toll the requirements of Article IV of the IADA. However, *Walker* is distinguishable on this point. Walker contended that the court erred by failing to dismiss the indictment with prejudice because he was not tried within 180 days after requesting a transfer to Texas under Article III, not Article IV, of the IADA. Opinions from the Waco Court of Appeals are not binding on this Court.

What suffices for waiver depends on the nature of the right at issue. *New York v. Hill.* 528 U.S. 110, 114, 120 S.Ct. 659, 145

19

L.Ed.2d 560 (2000). "[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). There is no requirement that a waiver of rights under the IADA be made "knowingly or intelligently" because the Act's protections are not founded on constitutional rights. *See Cooney v. Fulcomer,* 886 F.2d 41, 46 (3d Cir. 1989) (holding violation of IADA is not an infringement of a constitutional right); *United States v. Black,* 609 F.2d 1330, 1334 (9th Cir. 1979) (same); *Camp v. United States,* 587 F.2d 397, 400 (8th Cir.1978) (same); *see also Gray v. Benson,* 608 F.2d 825, 826-27 (10th Cir. 1979) (finding defendant waived IADA rights by requesting transfer to obtain medical treatment); *United States v. Scallion,* 548 F.2d 1168, 1170 (5th Cir. 1977) (finding defendant estopped from raising Article IV(e) claim where he requested return for parole hearing). Appellant's claim should be rejected. The signatures of his attorneys alone are sufficient. *See Bell v. State,* 768 S.W.2d 790, 801 (Tex. App. – Houston [14th Dist.] 1989, pet. ref'd); *Petrick v. State,* 832 S.W.2d

20

767, 772 (Tex. App. – Houston [1ˢᵗ Dist.] 1992, pet. ref'd), *overruled in part as stated on other ground, Blackshear v. State,* 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (holding that where the State and the accused agree to a continuance in the record, as provided by Article IV(c), the accused's personal consent is not required; counsel's signature is sufficient); Tex. Code Crim. Proc. Ann. art. 51.14, Art. IV (c)(stating that either the prisoner or his counsel must be present when a continuance is granted).

Although Appellant would have it otherwise, postponements or continuances of the case agreed to by defense counsel toll the time period required for bringing the accused to trial. *See State v. Powell,* 971 S.W.2d 577, 581 (Tex. App. – Dallas 1998, no pet.); *Rexroad v. State,* Nos. 05-99-01991-CR & 05-99-02004-CR, 2000 Tex. App. LEXIS 7231, at *4 (Tex. App. – Dallas Oct. 26, 2000, pet. ref'd) (not designated for publication). Moreover, the Supreme Court expressly rejected the proposition that the forfeiture of the Interstate Agreement on Detainers' deadlines may only be accomplished "explicitly or by an affirmative request for treatment that is contrary to or inconsistent with [those deadlines]." *Hill,* 528 U.S. at 118. As the Court explained, such an approach would enable defendants to

21

escape justice by willingly accepting treatment inconsistent with the act's time limits, and then recanting later on. *Id.* The Court in *Hill* ultimately held that defense counsel's agreement to a trial date outside the act's time period waived Hill's later complaint. *Id.* at 118.

This is the evidence in the record of the present case. Appellant was incarcerated in Oklahoma when he was indicted in Dallas County in the instant aggravated robbery. He was booked into the Dallas County jail on March 7, 2014, which the parties represented to be his arrival date under the statute. (RR4: 14, 16). On March 28, 2014, Appellant, through his appointed attorney Davis, agreed to continue the case to April 4, 2014. Then by an uninterrupted series of requested continuances, Appellant agreed to continue his trial to June 6, 2014. On June 9, 2014, Appellant received new counsel Mr. Allan Fishburn who also serves as appellate counsel in this case. The next day, on June 10, 2014, Appellant, through newly-appointed counsel, agreed to "request a continuance" until November 3, 2014. Thus, the statutory period was tolled during the period between March 28, 2014 to June 6, 2014 and June 10, 2014 to November 3, 2014. Only 25 days of the

120-day period would have expired on November 3, 2014, the date Appellant went to trial in the instant case. Thus, because Appellant assented to the trial date, he was precluded from complaining that the trial date was outside the 120-day period. The delays in bringing Appellant to trial were not due to prosecutorial delay; thus, the IADA provides no remedy for Appellant. Therefore, the trial court did not err by denying the motion to dismiss the indictments on the ground that the State had violated Appellant's rights under Article IV of the IADA. Point Two should be overruled.

## RESPONSE TO POINT THREE
**The evidence is sufficient to sustain Appellant's conviction.**

*Appellant's Contention*

Appellant asserts that the eyewitness testimony is insufficient to prove the element of identity beyond a reasonable doubt. Appellant's brief at 42.

*Pertinent Facts*

Amanda Edmiston testified that about 3:30 p.m. on July 20, 2006, she and Alyssa Acosta had something to eat at a Dallas County Wendy's restaurant. When they returned to her baby blue Pontiac Bonneville in the parking lot, a man approached her and

23

asked her the time of day. As she answered the man, he pulled out a black gun and told her to get into the driver's seat. She identified Appellant in the courtroom as that man. She remembered him because of the star tattoo on his neck. (RR6: 13-15, 17).

Appellant got into the middle of the back seat and he told Amanda that they were going to Kansas. Appellant took her cell phone. Amanda was terrified even though Appellant said he was not going to hurt anyone. She felt threatened by his having a gun. (RR6: 16). Alyssa told Appellant that they were not going to Kansas with him and he needed to let them go. Amanda drove around for 15 to 20 minutes until Appellant allowed the women to get out of the car at an elementary school. He drove away as they ran toward a building. (RR6: 17). She reported the license plate number of her stolen car to the police. (RR6: 33).

The next day, Amanda viewed a photographic lineup. See State's Exhibit 5. She made a positive identification of Appellant by his photograph. (RR6: 18). On cross-examination, Amanda stated that she would have identified Appellant in the courtroom even if she had not viewed a lineup. She remembered the star tattoo on his neck, his dark features, and his hair. (RR6: 32, 34).

24

Alyssa Acosta testified to the same essential facts as did Amanda. Alyssa recalled that it was about 3:30 p.m. on the day of the offense when she was sitting in Amanda's Bonneville parked in a Wendy's parking lot. Alyssa was sitting in the front passenger seat. A man approached the car and asked Amanda the time of day. (RR6: 37-38). The man pulled a gun. It was an automatic weapon, not a revolver. He told Amanda to get into the driver's seat, he got into the back seat, and he told Amanda to drive away. (RR6: 40-41).

Alyssa recalled that the gunman was Hispanic. He had dark features and a star tattooed on his neck. He said they were going to Kansas. (RR6: 41). Amanda drove around for about 10 minutes during which time Alyssa told the gunman that she was not going to Kansas with him. He took their cell phones, but he returned Alyssa's cell phone to her. He asked for their wallets, but Alyssa refused to relinquish her wallet. (RR6: 42). When the gunman released the women at a nearby school, they called the police to report the offense. Alyssa told the police that the gunman was on his way to Kansas in a stolen car. (RR6: 41, 43).

25

The next day, Alyssa viewed a photographic lineup. See State's Exhibit 6. (RR6: 43-44). She made a positive identification of one photograph. (RR6: 44). She testified that she was certain in her identification even though no tattoo was showing in the photograph because she remembered the gunman's eyes. (RR6: 58-59). Alyssa identified Appellant in the courtroom as the gunman who committed the offense. (RR6: 45).

There was additional evidence which corroborated the eyewitnesses' identifications and connected Appellant to the offense. Kingfisher County, Oklahoma Deputy Sheriff David Lanman testified that between 7:45 and 8:00 p.m. on the day of the offense, he stopped and arrested Appellant in Oklahoma. Appellant was driving a 1993 blue Pontiac with Texas license plates. He was traveling north on I-35. Lanman stopped Appellant at a location which is about 3 ½ to 4 hours driving distance from Dallas. The vehicle he was driving matched the description of the one stolen that day at 3:30 p.m. in a Dallas County aggravated robbery. After searching the vehicle, Lanman found a black 380 semi-automatic weapon on the driver's side. (RR6: 63-66). In Lanman's opinion,

26

the best way to travel from Dallas to Kansas is "straight up I-35," which goes directly into Kansas City. (RR6: 66-67).

After Appellant was taken into custody by Officer Lanman in Oklahoma, former Dallas County Police Department Detective Martha Sanders created lineups including Appellant's photograph. Sanders then showed lineups to Amanda and Alyssa at separate times in different locations. (RR6: 69, 71, 72, 76-77). Both Amanda and Alyssa made positive identifications of Appellant's photograph as that of the gunman who committed the aggravated robbery. (RR6: 18, 43-44).

*Principles of Law Applied to Facts and Conclusions*

Appellant contends "[i]t is absurd to conclude that anyone could identify" him as the perpetrator of the offense based on these circumstances: (1) he was identified by two eyewitnesses to whom he was a stranger, (2) the eyewitness viewed him only for a brief time during the offense, (3) the eyewitnesses' ability to form a memory of his face was impaired by the trauma of the event, and (4) eight years had elapsed from the time of the event to the day of trial. Appellant's brief at 42. Obviously, Appellant is asking this

27

Court to reassess the weight and the credibility of the eyewitness testimony upon which the jury relied to convict him.

The reviewing court applies the *Jackson v. Virginia* sufficiency standard of review to sufficiency challenges concerning the elements of a criminal offense. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 898-913 (Tex. Crim. App. 2010). Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact-finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319; *Laster v. State,* 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

The reviewing court's role is that of a due-process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). It is the function of the trier of fact to weigh any evidence, and to evaluate the credibility of any witnesses. *See Dewberry v. State,* 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Reviewing courts,

28

therefore, defer to the jury's credibility and weight determinations. *See Marshall v. State,* 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). Under the *Jackson* standard, any conflicts or inconsistencies in the witness's testimony, including any conflicts regarding the weight of the evidence, are exclusively within the jury's province to resolve. *See Dewberry,* 4 S.W.3d at 740; *Marshall,* 210 S.W.3d at 625 (requiring appellate courts to resolve any inconsistencies in evidence in favor of verdict and "defer to the jury's credibility and weight determinations").

At the closing of the trial on the merits, defense counsel argued to the jury that identity of the perpetrator was at issue. He hoped to persuade the jury that the victims were too upset and too startled by the gunman's actions during the fleeting offense committed eight years ago to have presented reliable testimony identifying Appellant as the man who committed the offense. (RR6: 112-13). He challenged the lineup procedure as being unduly suggestive. (RR6: 113-18). As the fact-finder, the jury was responsible for resolving all of the issues that Appellant had raised at trial with respect to the testimony of these two witnesses (i.e., weight of the evidence and credibility of the witnesses). *See*

29

*Dewberry,* 4 S.W.3d at 740; *Marshall,* 210 S.W.3d at 625. The jury was well-within its province to believe Amanda and Alyssa when they testified that Appellant is the Hispanic man with the tattooed neck, distinctive eyes and hair, and dark features they remembered from having seen him during the commission of the aggravated robbery, and to disbelieve and reject any suggestions from the defense to the contrary. *See Dewberry,* 4 S.W.3d at 740; *Marshall,* 210 S.W.3d at 625. These eyewitnesses appeared to be credible because their in-court identifications of Appellant were consistent with the identifications from the lineups they made only one day after the offense had occurred.

In addition, Appellant was linked to the offense by circumstantial evidence. He was found in possession of the car stolen during the aggravated robbery only four hours after it had occurred. He was driving on a highway best suited to take him directly from Dallas to Kansas City, the location he told the eyewitnesses he wanted to go to before he took the car. Inside the car was a weapon which matched the descriptions of the weapon the eyewitnesses had seen during the offense.

Viewing the evidence in the light most favorable to the verdict, and deferring to the jury's credibility and weight determinations, this Court should conclude that a rational fact-finder could have found, beyond a reasonable doubt, that Appellant committed the offense, as charged. Therefore, this Court should overrule this point and hold that the evidence is legally sufficient to support Appellant's conviction. *See Johnson v. State,* 176 S.W.3d 74, 78 (Tex. App. – Houston [1st Dist.] 2004, pet. ref'd) (reasoning that the testimony of a single eyewitness identifying the accused is sufficient to support a felony conviction for aggravated robbery); *Santos v. State,* 116 S.W.3d 447, 457-59 (Tex. App. – Houston [14th Dist.] 2003, pet. ref'd) (concluding evidence sufficient when eyewitnesses identified defendant as a participant in a robbery and circumstantial evidence relating to the firearm used in the robbery corroborated witness identification and showed defendant's guilt even though defendant testified he was not involved in the robbery); *Mayes v. State,* Nos. 03-10-00101-CR & 03-10-00102-CR, 2011 Tex. App. LEXIS 2075, at *26 (Tex. App. – Austin Mar. 18, 2011, no pet.)(mem. op., not designated for publication) (finding evidence sufficient to sustain a robbery conviction because both victims

identified defendant, neither victim expressed any uncertainty in their identifications, defendant was found driving the vehicle used in the robberies, and officers found a black BB gun like the one used to commit the robberies).

## RESPONSES TO POINT 4

**Appellant failed to file a plea to jurisdiction in the 283rd Judicial District Court, and he waived Point 4's complaint.**

**The 283rd District Court which tried Appellant's cases did not lack jurisdiction due to an improper transfer to its docket.**

*Appellant's Contention*

Appellant contends that the court which tried his cases (which he incorrectly identifies as the 291st Judicial District Court instead of the 283rd Judicial District Court), never acquired jurisdiction of his case and the judgment of conviction out of that court is void. This claim is based on an assertion that Appellant's indictment was presented to the 204th Judicial District Court of Dallas County, and his case was never properly transferred out of that court to the court which heard his cases because the record does not contain the 204th Judicial District Court's transfer order. Appellant's brief at 44.

*Principles of Law Applied to Facts and Conclusions*

32

Appellant failed to file a formal plea challenging the jurisdiction of the trial court. Thus, he failed to preserve this issue for appellate review. *Lemasurier v. State,* 91 S.W.3d 897, 899-900 (Tex. App.- Fort Worth 2002, pet. ref'd) (fact that no transfer order contained in record is procedural matter, not jurisdictional; defendant who fails to file plea to jurisdiction waives complaint); *Gullatt v. State,* Nos. 05-13-01515-CR & 05-13-01516-CR, 2014 Tex. App. LEXIS 13832, at *3 (Tex. App. – Dallas Dec. 29, 2014, no pet.) (mem. op., not designated for publication).

If this Court decides to address this unpreserved point, it should overrule it because this Court has previously met and rejected this same argument. *Hill v. State,* No. 05-09-00078-CR, 2010 Tex. App. LEXIS 1486, at *3 (Tex. App. – Dallas Mar. 3, 2010, no pet.) (not designated for publication); *Ives v. State,* Nos. 05-13-00615-CR & 05-13-00616-CR, 2014 Tex. App. LEXIS 3749, at *3 (Tex. App. – Dallas Mar. 31, 2014,no pet.) (mem. op., not designated for publication). A grand jury formed and impaneled by a district judge inquires "into all offenses liable to indictment" and hears all the testimony available before voting on whether to indict an accused. Tex. Code Crim. Proc. Ann. arts. 20.09, 20.19 (West

33

2005); *Ex parte Edone,* 740 S.W.2d 446, 448 (Tex. Crim. App. 1987). A grand jury is "often characterized as an arm of the court by which it is appointed rather than an autonomous entity." After the conclusion of testimony, a grand jury votes "as to the presentment of an indictment." *Dallas County Dist. Attorney v. Doe,* 969 S.W.2d 537, 542 (Tex. App. – Dallas 1998, no pet.). Following presentment, an indictment is filed in a court with competent jurisdiction, *i.e.,* jurisdiction to hear the case. *Hultin v. State,* 351 S.W.2d 248, 255 (Tex. Crim. App. 1961).

In counties having two or more district courts (such as Dallas County), the judges of the courts may adopt rules governing the filing, numbering, and assignment of cases for trial and the distribution of the courts' work they consider necessary or desirable to conduct the business of the courts. Tex. Gov't Code Ann. §74.093 (West 2013) (addressing adoption of local rules of administration to provide, in part, for assignment, docketing, transfer, and hearing of all cases). Thus, a specific district court may impanel a grand jury; however, it does not necessarily follow that all cases returned by the grand jury are assigned to that court.

*Bourque v. State,* 156 S.W.3d 675, 678 (Tex. App. – Dallas 2005, pet. ref'd).

In the present case, the indictment reflects that a grand jury was impaneled by the 204th Judicial District Court of Dallas County. (CR: 10). Following the return of Appellant's indictment, this case was filed in the 283rd Judicial District Court of Dallas County. The Clerk's Record reflects the statement of the Honorable Rick Magnis, presiding judge of the 283rd Judicial Court, that his court received "instruments and papers" associated with this case. (CR: 4). The 283rd Judicial Court's docket sheet reflects the filing of the indictment in that court. (CR: 5-9). Nothing in this record indicates that this case was originally filed in, or appeared on the trial docket of the 204th Judicial District Court. Because the 283rd Judicial District Court had jurisdiction to hear and render judgment in Appellant's case, Appellant's Point 4 should be overruled.

## **PRAYER**

The State prays that this Honorable Court will affirm the judgment of the trial court in the present case. Respectfully submitted,

/s/Patricia Poppoff Noble

SUSAN HAWK                          PATRICIAPOPPOFFNOBLE
District Attorney                   Assistant District Attorney
Dallas County, Texas                State Bar No. 15051250
                                    Frank Crowley Courts Building
                                    133 N. Riverfront Blvd., LB-19
                                    Dallas, Texas 75207-4399
                                    (214) 653-3634
                                    pnoble@dallascounty.org

## CERTIFICATE OF SERVICE AND WORD COUNT

I hereby certify that a true copy of the foregoing brief was served on, Allan Fishburn, attorney for Appellant by efiletexas.gov and by United States mail, on June 1, 2015.

I hereby further certify that the length of this brief is 8,132 words using Microsoft Word 2010.

/s/Patricia Poppoff Noble
PATRICIA POPPOFF NOBLE